IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID ALAN EDWARDS, JR., | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI,[1] | : | No. 21-cv-1429 |
| Commissioner of Social Security. | : | |

**MEMORANDUM OPINION**

**CRAIG M. STRAW**                                                    **September 29, 2023**
**United States Magistrate Judge**

David Alan Edwards, Jr. seeks review of the Commissioner's decision denying his

application for Supplemental Social Security (SSI) benefits.  The matter was referred to me[2] on

consent of the parties.[3]  Doc. 28.  For the following reasons, I grant Edwards's request for

review, vacate the Commissioner's decision, and remand the case for further proceedings

consistent with this opinion.

I.     **PROCEDURAL HISTORY**

On January 7, 2019, Edwards protectively filed an application for SSI under Title XVI of

the Social Security Act.  R. 55.  In his application, Edwards alleged he became disabled on April

22, 2015 when he was 47 years old.  R. 16; 91.  The claim was denied initially on May 15, 2019,

and then again on reconsideration.  R. 16.  Edwards filed a request for a hearing.  Id.  Due to the

extraordinary circumstances presented by the COVID-19 Pandemic, the Administrative Law

Judge, with consent of the parties, held a telephone hearing on June 30, 2020.  Id.  Edwards was

---

[1] Pursuant to Fed. R. Civ. P. 25(d) and 42 U.S.C. § 405(g), Kijakazi was automatically
substituted into cases brought against the Commissioner upon her appointment.
[2] I was reassigned the case from Magistrate Judge David R. Strawbridge on April 11, 2023.  Doc.
19.
[3] See Doc. 28; 8 U.S.C. § 636(c); Fed. R. Civ. P. 73.

represented by counsel.  Id.  Counsel moved to amend the alleged disability onset date to January 7, 2019, and the motion was granted.  R. 16; 59-60.  The ALJ originally issued a written decision denying benefits on July 24, 2020 and then amended her decision on July 27, 2020.[4]  R. 16-17; 26; 34; 44.

On January 28, 2021, the Appeals Council denied Edwards's request for review, and the ALJ's decision became the final decision of the Commissioner of Social Security.  R. 1-3; 20 C.F.R. §§ 404.981, 416.1481.  Edwards's counsel then filed this action in federal court.  Doc. 1. The parties filed briefs.  Docs. 8; 13; 18.

On May 4, 2023, the Court issued an order directing the parties to appear for oral argument on July 13, 2023.  Doc. 20.  In advance of oral argument, the parties were ordered to file supplemental briefing on whether the ALJ's failure to explain why she did not include a limitation to one-and two-step tasks in the residual functional capacity (RFC) resulted in harmful error.  Id.  The parties filed their supplemental briefs and the Court held oral argument.  Docs. 21, 22 & 24.

## II.    LEGAL STANDARDS

To prove disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1).  The Commissioner employs a five-step sequential process to determine if a claimant is disabled, evaluating:

---

[4] The amended decision addressed additional medical evidence Edwards's counsel submitted on July 20, 2020 that was not discussed in the original decision but did not change the ALJ's decision to deny benefits.  R. 17.

1.      Whether the claimant is currently engaged in substantial gainful activity;

2.      If not, whether the claimant has a "severe impairment" that significantly limits their physical or mental ability to perform basic work activities;

3.      If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings," <u>see</u> 20 C.F.R. pt. 404, subpt. P, app. 1), which results in a presumption of disability;

4.      If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the RFC to perform their past work; and

5.      If the claimant cannot perform their past work, whether there is other work in the national economy that the claimant can perform.

<u>See</u> <u>Zirnsak v. Colvin</u>, 777 F.3d 607, 611 (3d Cir. 2014); <u>see also</u> 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Plaintiff bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant can perform other jobs in the local and national economies in light of their age, education, work experience, and RFC. <u>See</u> <u>Poulos v. Comm'r of Soc. Sec.</u>, 474 F.3d 88, 92 (3d Cir. 2007).

The court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  <u>See</u> 42 U.S.C. § 405(g); <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F.3d 429, 431 (3d Cir. 1999).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" and must be "'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'"  <u>Zirnsak</u>, 777 F.3d at 610 (quoting <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 552 (3d Cir. 2005)); <u>see also</u> <u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1154 (2019) (explaining substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (quoting <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938) (additional citations omitted)).

3

It is a deferential standard of review.  Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004) (citing

Schaudeck, 181 F.3d at 431).

## III.   ALJ'S DECISION AND PLAINTIFF'S REQUEST FOR REVIEW

The ALJ determined that Edwards had not engaged in substantial gainful activity since

January 7, 2019—the application date.  R. 19.  The ALJ found that Edwards had several severe

impairments including schizoaffective disorder, neurodevelopmental disorder (learning

disability), and post-traumatic stress disorder (PTSD).[5]  R. 19; see also 20 C.F.R. §§

404.1520(c), 416.920(c).  These impairments or combination of impairments, however, did not

meet or medically equal the severity of one of the Listings.  R. 20; 20 C.F.R. pt. 404, subpt. P,

app. 1; see also 20 C.F.R. §§ 416.920(d), 416.925-26.  When evaluating Edwards's mental

impairments pursuant to the "paragraph B" criteria,[6] the ALJ found that Edwards had mild

limitations in understanding, remembering, or applying information and concentrating,

persisting, or maintaining pace.  R. 20.  Edwards had a moderate limitation interacting with

others and adapting or managing himself.  Id.  The ALJ determined that Edwards's mental

---

[5] The ALJ mentioned other non-severe impairments such as gastric bleed/gastrointestinal
hemorrhage, polysubstance abuse including alcohol, marijuana, and cocaine, and a closed
fracture of the right fibula and right tibia posterior malleolus.  R. 19-20.

[6] The four "paragraph B" criteria that rate a claimant's functional limitations are: (1)
understanding, remembering, or applying information; (2) interacting with others; (3)
concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R.
pt. 404, subpt. P, app. 1, 12.04(B).  To satisfy the "paragraph B" criteria, the mental impairment
must result in one extreme limitation or two marked limitations in the four areas of functioning.
Id. at § 12.00.  An extreme limitation is the inability to function independently, appropriately, or
effectively, and on a sustained basis.  20 C.F.R. pt. 404, subpt. P, app. 1.  A marked limitation is
a seriously limited ability to function independently, appropriately, or effectively, and on a
sustained basis.  Id.; see also 20 C.F.R. § 416.920a.

impairments did not satisfy the "paragraph B" criteria.  Id.  The ALJ also found that the evidence failed to establish the presence of the "paragraph C" criteria.[7]  R. 21.

Considering the entire record, the ALJ found that Edwards had the RFC to perform a full range of work at all exertional levels.  Id.  The ALJ, however, limited Edwards to performing simple, routine tasks at a consistent pace but not a production rate pace where each task must be completed within a strict time deadline.  Id.  The ALJ did not address, in any way, a possible restriction to one- and two-step tasks.  Edwards was also restricted to low stress jobs, defined as requiring only occasional decision-making and changes in the work setting, and only occasional interaction with supervisors, co-workers, and the public.  Id.  Edwards was further limited to no work involving shared tasks with co-workers.  Id.

Edwards had no past relevant work.  R. 25; 20 C.F.R. § 404.1565(a), 416.965.  Relying on the testimony of vocational expert ("VE") Christine Carrozza-Slusarski, the ALJ determined that based on Edwards's age, education, work experience, and RFC, a significant number of jobs existed in the national economy he could perform including cleaner, laundry laborer, linen-room attendant, and sorter I.  R. 25; 82; see also 20 C.F.R. §§ 404.1566(b), 416.969, 416.969a.  Based on the above, the ALJ found Edwards was not disabled.  R. 26.

---

[7] To satisfy the "paragraph C" criteria, a claimant must show a medically documented history of the existence of a disorder over a period of at least two years and evidence of both:  (1) medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and diminishes the symptoms and signs of the claimant's mental disorder; and (2) marginal adjustments, that is, minimal capacity to adapt to changes in one's environment or to demands that are not already part of daily life.  20 C.F.R. pt. 404 subpt. P, app. 1, 12.00(G)(2)(b)-(c).  The ALJ noted that Edwards's care had been routine and conservative, without the need for emergency room visits for any mental health-based maladies, crisis intervention, or psychiatric hospitalizations.  R. 21.

In his request for review, Edwards raises two issues.  First, Edwards asserts the ALJ failed to address the established limitation to one- and two-step tasks in Edward's RFC.  Doc. 8, at 1; 4-8.  Further, he argues the ALJ's failure was not a harmless error and remand is required. Id.  Next, Edwards contends the ALJ's decision in this case is constitutionally defective because the appointment of Andrew Saul as a single Commissioner of the SSA who is removable only for cause and serves longer than the President violates the separation of powers doctrine.  Id. at 8-12. The Commissioner counters that substantial evidence supports the ALJ's findings regarding Edwards's RFC and, even if there were errors, any errors were harmless.  Doc. 13, at 18-22.  The Commissioner also argues that Edwards's separation of powers claim does not entitle him to rehearing of his disability claim for several reasons, but mainly because Edwards cannot demonstrate the removal restriction caused the denial of his benefits.  Id. at 6-17.

## IV.   **FACTUAL BACKGROUND**

### A.  Medical opinions

Edwards was born in 1967 and is therefore an individual considered "closely approaching advanced age."  R. 91; 20 C.F.R. §§ 404.1563(d), 416.963(d).  Edwards initially presented at Omni Health Services in February 2016 complaining of hallucinations, paranoia, anxiety, and PTSD symptoms.  R. 428; 436.  The provisional diagnoses were schizoaffective disorder and PTSD.  R. 436.  His continued treatment with Omni over the following years showed similar findings regarding his mental impairments, with some setbacks and some improvement.  R. 441-44; 533-38.  Edwards has used many medications as part of treatment including, among others, Trazodone, Abilify, Depakote, Perphenazine, Atarax, and Valium.  R. 259; 427; 429; 437; 440.

Several other medical providers evaluated Edwards.  R. 22-24.  At the request of the Commissioner, Amanda Kochan-Dewey, Psy.D., performed a psychological exam and an IQ and memory evaluation on Edwards in April 2019.  R. 22; 489-96.  Edwards claimed dysphoric mood, loss of interests and energy, fatigue, worthlessness, diminished self-esteem, and difficulty with focus, planning, and organizing.  R. 491.  Edwards also had passive thoughts of suicidal ideation, but no plan or intent or homicidal ideations.  Id.  He reported mania symptoms, visual hallucinations, paranoid ideations, and distrust of others.  Id.  His manic episodes had been more under control in recent years, and his visual hallucinations had stopped.  Id.  Edwards's appetite was normal, he was cooperative and well-groomed, he was alert and orientated, and his attention and concentration were intact.  R. 491-92.  Edwards reported that he dresses and bathes himself once a month, makes simple food, does laundry three to four times a week, and manages money.  R. 495.  He does not clean and does not have friends anymore (except for his girlfriend).  Id.

Edwards was friendly, relaxed, and comfortable throughout testing.  R. 493.  While he was fully oriented and cooperative, Edwards's motor behavior was restless, and his mood was neutral with a somewhat restrictive affect.  R. 492.  Dr. Kochan-Dewey reported an IQ of 94 (based on the Wechsler Adult Intelligence Scale, Fourth Edition), overall with significant scatter which "indicates the likelihood of a learning disability."  Id.  Based on her evaluation of the medical records, exams, and testing, Dr. Kochan-Dewey diagnosed Edwards with schizoaffective disorder (bipolar type), PTSD, specific learning disorder, and substance use, alcohol, and cocaine in sustained remission.  R. 496.  Dr. Kochan-Dewey also provided a Medical Source Statement (MSS).  R. 497-99.  The MSS addressed Edwards's ability to perform work-related activities based on his mental impairments.  Id.  Kochan-Dewey reported no restrictions in certain areas

7

and in others no more than mild limitations to Edwards's ability to engage in work related-activities.  Id.

In April 2019, Dr. Faisal A. Roberts, Psy.D., a state agency psychologist, evaluated Edwards as part of the initial disability determination.  R. 24; 98-103.  Dr. Roberts listed Edwards's primary impairment as "[s]chizophrenia spectrum and other psychotic disorders."  R. 99.  When considering the paragraph B criteria, Dr. Roberts found Edwards had mild limitations in understanding, remembering, and applying information and in concentrating, persisting, or maintaining pace.  Id.  In addition, Dr. Roberts opined Edwards had moderate limitations in interacting with others and adapting or managing himself.  Id.  Dr. Roberts recommended a different RFC from that of Dr. Kochan-Dewey because Dr. Roberts believed Dr. Kochan-Dewey had underestimated the severity of Edwards's functional limitations.  R. 102-03.  Dr. Roberts concluded that Edwards's basic memory processes were intact, and he can "understand, retain, and follow simple instructions (**i.e. perform one-and two-step tasks**)."  R. 103 (emphasis added).  He also found that Edwards can perform "simple, routine, repetitive tasks in a stable environment."  Id.

At the reconsideration level, Dr. Frank M. Mrykalo, Ed.D., another state agency psychologist, conducted a disability determination and made similar findings as Dr. Roberts.  R. 24; 108-20.  At the time, Dr. Myrkalo noted that Edwards was a 51-year-old man, who presented with Schizoaffective Disorder (Bipolar Type), PTSD, Specific Learning Disorder, and substance use disorders for alcohol and cocaine (both in sustained remission).  R. 115.  Dr. Mrykalo found Edwards had mild limitations in understanding, remembering, and applying information and in concentrating, persisting, and maintaining pace, and moderate limitations interacting with others

8

and adapting or managing himself.  Id.  When evaluating Dr. Kochan-Dewey's RFC, Dr.

Mrykalo found, like Dr. Roberts, that Dr. Kochan-Dewey underestimated Edwards's functional

limitations.  R. 118.  Regarding Edwards's RFC, Dr. Mrykalo opined that

> The claimant's basis memory processes are intact.  The claimant
> can understand, retain, and follow simple instructions (**i.e.
> perform one- and two-step tasks**).  The claimant can make
> simple decisions and would not require special supervision in order
> to sustain a routine.  The claimant can perform simple, routine,
> repetitive tasks in a stable environment.  The claimant is capable of
> performing within a schedule and at a consistent pace.

Id. (emphasis added).

### B.  Non-medical evidence

Edwards completed two years of college.  R. 83; 490.  Edwards outlined his mental

health issues and limitations at the hearing.  R. 61; 273.  Edwards's depression began in 2007

after he was stuck in a burning house.  R. 71; 428.  The depression generally makes him

incapable of doing anything except lying in bed, but he will do light work around the house.  R.

71; 271.

Edwards stated he has remarkably bad hygiene to the point where he did not brush his

teeth for four years and no longer has teeth.  R. 63.  Edwards also testified he is paranoid and

hears voices.  R. 64.  Since taking medication, Edwards hears the voices less often—once or

twice a month—but when stressed the symptoms return.  R. 64-65.  The voices talk about him

and the harm they will do to him.  R. 65.  Edwards claims his agoraphobia prevents him from

leaving the house.  R. 63.

Edwards thinks most people are out to get him, so he limits his interaction with others.

R. 70.  He recounted two violent incidents at work.  R. 76.  During one of the incidents, a cook

punched a waitress which Edwards did not take well so "[he] took him out."  Id.  The other

incident involved an altercation that "came to blows" because of a "difference in cultures."  Id.

He has cancelled appointments due to paranoia.  R. 65; 80.  Edwards has been treating with a

therapist, most recently by phone, for several years.  R. 79-80; 490.

       Edwards lives in a house with his girlfriend.  R. 71-72.  Edwards reports that it takes a lot

of effort for him to concentrate.  R. 69.  Edwards can cook for himself when he is at home and

can shop, but almost never gets what he needs at the store because he forgets items.  R. 72.  He

has forgotten a pot on the stove until the fire alarm has sounded.  Id.  Edwards has not driven

since 2016 and walks or takes the bus to go places.  R. 73.

## V.   DISCUSSION

### A.  The ALJ erred when she failed to address the limitation to one-and two-step tasks in her decision, and the errors were not harmless.

       An RFC assessment is the most a claimant can do in a work setting despite the limitations

caused by his or her impairments.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC is

based on all the relevant evidence in a case record—medical and non-medical.  20 C.F.R. §§

404.1545(a)(3), 416.945(a)(1), (a)(3).  An ALJ is required to include in the RFC any credibly

established limitations supported by the record.  Salles v. Comm'r of Soc. Sec., 229 Fed. App'x

140, 147 (3d Cir. 2007).  It is the exclusive responsibility of the ALJ to determine the claimant's

RFC.  20 C.F.R. §§ 404.1546(c), 416.946(c).

       The ALJ's RFC assessment must be "'accompanied by a clear and satisfactory

explication of the basis on which it rests.'"  Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir.

2001) (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)).  If potentially conflicting

evidence exists in the record, an ALJ must "give some indication of the evidence which he [or

she] rejects and his [or her] reasons for discounting such evidence." Burnett v. Comm'r Soc.
Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see Cruz v. Comm'r of Soc.
Sec., 244 Fed. App'x 475, 479 (3d Cir. 2007) (citation omitted) (stating when record contains
conflicting evidence ALJ must explain what evidence is accepted and what evidence is rejected
and reasons for determination).  In the absence of such evidence, the Court "'cannot tell if
significant probative evidence was not credited or simply ignored.'" Burnett, 220 F.3d at 121
(quoting Cotter, 642 F.2d at 705).  The ALJ is not required to discuss or refer to every piece of
the relevant evidence in the record when assessing a RFC, provided the reviewing court can
determine the basis of the decision.  See Fargnoli, 247 F.3d at 42.  Once an ALJ has made an
RFC determination, the RFC assessment will not be set aside if it is supported by substantial
evidence.  Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002).

Here, the ALJ evaluated the medical evidence in the record and found the opinions of Dr.
Roberts and Dr. Mrykalo were "persuasive" in formulating Edwards's RFC which is:

> to perform a full range of work at all exertional levels but with the
> following nonexertional limitations: he is limited to the
> performance of **simple, routine tasks** at a consistent pace but not a
> production rate pace where each task must be completed within a
> strict time deadline.  In addition, the claimant is limited to low
> stress jobs, defined as requiring only occasional decision making
> and only occasional changes in the work setting.  The claimant can
> endure only occasional interaction with supervisors, co-workers,
> and the public.  Finally, he is limited to no work involving shared
> tasks with coworkers.

R. 21 (emphasis added).

When discussing Dr. Roberts and Dr. Myrkalo's opinions,[8] the ALJ stated that "[t]he undersigned finds these opinions persuasive, as they are consistent with and supported by the evidence of record, as previously discussed.  In particular, the findings of tangential thought process, pressured speech, restless motor activities, and a restricted affect, support the assessed limitations."  R. 24.

The ALJ then questioned the VE about available jobs for Edwards in the national economy based on his RFC.  R. 83.  Specifically, the ALJ asked:

> Q  [ALJ] So Ms. Slusarski, I wanted to ask you about a hypothetical individual if you could please consider someone of our Claimant's age, education, and work experience who is able to perform work at any exertional level except have only occasional interaction with supervisors, the general public, and with coworkers.  So no work involving shared tasks with coworkers and would need to work in a low-stress job defined as having only occasional decision making and only occasional changes in the work setting; and would need to perform **simple, routine tasks** at a consistent pace, but not a production rate pace where each task must be completed within a strict deadline?  Would there be work [for] such individual in the national economy, and if so, could you please provide for me examples?
>
> A  [VE] Yes. Yes.  There would be work.  So here are a few examples.  What we have is a janitor or industrial cleaner.  And this is medium and unskilled.  The SVP is 2.  The DOT[9] code is 381.687-018. The national numbers of jobs here are 214,700.  Here's another example at medium.  This is a laundry worker or laundry laborer.  It's -- medium and unskilled.  The SVP is 2.  The DOT code is 361.687-018.  And our national numbers of jobs here are 44,000.  And one more example, this is also at medium.  This is a linen room attendant like at a hospital.  So the linen room attendant is medium, unskilled, SVP 2.  The DOT code is 222.387-030, and the national numbers of jobs are 193,400.

---

[8] The opinions of other medical providers, including Drs. Maas, Monfared, and Tedesco are not discussed in detail here as their specific findings are not pertinent to the issues before the Court.  See R. 98; 105; 114; 505-16.

[9] Dictionary of Occupational Titles ("DOT") (4th ed., rev. 1991).

> Q  [ALJ]  Thank you.  And just so there's a variety of exertional
> levels, can you also provide a light job?
>
> A [VE]  Oh, absolutely.  So at light, here's an example of what we
> have.  This is a sorter 1, sorting small products, light, unskilled,
> and SVP 2.  DOT code 569.687-022.  National numbers of jobs are
> 51,000.

R. 83-84 (emphasis added).

If an ALJ fails to incorporate all credibly established functional limitations without explaining the omission, remand may be warranted.  See Burnett, 220 F.3d at 122.  Several district courts in this circuit have considered the issue and agreed.  Recently, in Stine v. Kijakazi, the Court remanded a case in which the ALJ found two state psychiatric consultants' opinions were "partially persuasive," but the decision failed to mention or address the consultants' findings regarding plaintiff's "marked limitation" in the ability to carry out detailed instructions.  No. 21-5492, 2023 WL 3483885, at *9 (E.D. Pa. May 15, 2023).  While the ALJ concluded that the claimant's limitations were consistent with restrictions to "simple, routine tasks at a consistent pace," the Court labeled the omission of the marked limitation in the RFC "problematic," in part, because the ALJ failed to consider that such a claimant would generally be restricted to one-and two-step functions.  Id. (citation omitted).  After highlighting other reasons for the error, the Court pointed out the ALJ "compounded the error" by failing to explain why the limitation was not included in the RFC and violated the rule that an ALJ is not permitted to reject evidence for no reason at all.  Id. at 10 (citations omitted); see also Maher v. Saul, No. 19-cv-05721-JDW, 2020 WL 5876808, at *4, *6-8 (E.D. Pa. Sept. 9, 2020), approved and adopted, October 1, 2020 (remanding case in which ALJ gave significant weight to psychologist opining claimant was limited to "simple job instructions (i.e., performing one-and two-step

13

tasks)," when Court could not readily discern why limitation was not included in RFC or if ALJ rejected or improperly ignored it).[10]

Similarly, in <u>Simon v. Kijakazi</u>, the Court remanded a case in which the ALJ determined a medical opinion was persuasive that limited plaintiff to one and two-step tasks regarding "understanding, retaining, and following simple instructions, *i.e.*, performing one and two-step tasks or instructions," however, the limitation was not included in claimant's RFC.  No. 1:20-cv-02064, 2022 WL 828935, at *2, *3, *9 (M.D. Pa. March 8, 2022).  While the Court mentioned it was an "extremely close call," the Court found an explanation was required addressing why the limitation was not included in the RFC in "any meaningful fashion" because of the weight attributed to the medical opinion.  <u>Id.</u> at *9.  The Court noted that, although the ALJ was not required to include the limitation, the "limitation was a material part of the doctor's opinion and its unexplained absence from the RFC leaves an evidentiary void in this case."  <u>Id.</u> at *10; <u>see also</u> <u>Podunajec</u>, 2020 WL 7319779, at *6 (remanding case when ALJ did not explain why state psychologist's opinion that claimant should be limited to one- and two-step tasks was rejected "especially in light of [ALJ's] conclusion that his opinion was entitled to great weight" and decision to ignore certain medical evidence while attributing great weight to other evidence must

_____

[10] Although the distinction between an RFC for simple, routine tasks as opposed to one and two-step tasks is unsettled in the Third Circuit, many district courts have decided there is a distinction, and the distinction is meaningful.  <u>See e.g.</u>, <u>Stine</u>, 2023 WL 3483885, at *9 (citing cases); <u>Podunajec v. Saul</u>, No. 3:19-cv-01938, 2020 WL 7319779, at *6 (M.D. Pa. Dec. 11, 2020) (noting significant difference between RFC with limitation to one and two-step tasks and RFC with limitation to simple, routine tasks and remanding when ALJ erred by not including one-and two-step tasks in RFC); <u>Beltran v. Berryhill</u>, 3:17-cv-00715, slip. op. at 2 (M.D. Pa. Feb. 20, 2018) ("there is a significant and now well-acknowledged difference between an RFC limitation to one-to-two step tasks and an RFC limitation to short, simple instructions.") (citations and internal quotations omitted).

be explained); <u>Harden v. Comm'r of Soc. Sec.</u>, No. 13-906, 2014 WL 4792294, at \*5-6 (W.D. Pa. Sept. 24, 2014) (finding error requiring remand when opinion of medical provider, afforded the "greatest weight," limiting plaintiff to one-and two-step tasks was not included in RFC and it was unclear whether omission was intentional and whether substantial evidence supported the ALJ's decision).

In this case, the ALJ's failure to explain or account for the omission of the one-and two-step task limitation in Edwards's RFC constituted error.  As noted above, the ALJ found that both Dr. Roberts and Dr. Mrykalo's opinions were "persuasive" for purposes of assessing Edwards's RFC.  R. 24.  When discussing Edward's memory process, Dr. Roberts specifically found it was intact and he could "understand, retain, and follow simple instructions (<u>i.e. perform one-and two-step tasks</u>)."  R. 103 (emphasis added).  Dr. Roberts also mentioned Edwards can perform "simple, routine, repetitive tasks in a stable environment."  <u>Id.</u>  Likewise, Dr. Mrykalo opined that Edwards's basis memory processes were intact but that he could only "understand, retain, and follow simple instructions (<u>i.e., perform one- and two-step tasks</u>)" and "perform simple, routine, repetitive tasks in a stable environment."  R. 118 (emphasis added).  The ALJ specifically found Dr. Kochan-Dewey's opinion that Edwards had a lesser "mild" limitation in the work function areas was "unpersuasive" since it was inconsistent and unsupported by the findings of Dr. Roberts and Dr. Mrykalo.  R. 24.

Despite the finding that the medical opinions of Dr. Roberts and Dr. Mrykalo were "persuasive," when formulating the RFC (and questioning the VE) the ALJ only limited Edwards to "simple, routine tasks" at a consistent pace and did not address, in any way, whether she was adopting the limitation to one-and two-step tasks as part of the RFC.  The omission makes it

impossible to determine whether the ALJ considered, overlooked, or simply ignored the limitation.  See Burnett, 220 F.3d at 121 (quotations omitted).  This evidentiary void in the RFC constitutes error.  Id. at 123; Stine, 2023 WL 3483885, at *10; Simon, 2022 WL 828935, at *9-10.

Relatedly, a hypothetical question to the VE must include all the functional limitations the record supports and an ALJ adopts.  See Ramirez v. Barnhart, 372 F.3d 546, 554-55 (3d. Cir. 2004); Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987) (citations omitted).  The burden of proof at step five shifts to the Commissioner of Social Security.  See Poulous, 474 F.3d at 92 (citing Ramirez, 372 F.3d at 551).  If medically undisputed evidence of specific impairments is not included in the hypothetical to the VE, the VE's response cannot be considered substantial evidence.  Burns, 312 F.3d at 123 (citing Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984)); see also Ramirez, 372 F.3d at 554-56 (vacating ALJ's decision when hypothetical to VE did not capture all of claimant's mental impairments and restrictions because, even though hypothetical included claimant's restriction to one- and two-step tasks, it did not include claimant's deficiency in concentration, consistency, and pace); Podedworny, 745 F.2d at 218-19 (finding ALJ's failure to include two medically undisputed impairments in questions to VE rendered questions defective and answer was not considered substantial evidence).

In Podunajec, the Court found that the ALJ's decision was not supported by substantial evidence when the ALJ relied on the answers to questions posed to the VE that included a limitation that plaintiff could perform simple routine tasks, without specifically limiting plaintiff to only one-and two-step tasks.  2020 WL 7319779, at *6.  The ALJ failed to include or explain why she did not include the one-and two-step task restriction in the RFC set forth in the medical

16

opinion given "great weight." Id.  The Court remanded the case, determining that substantial

evidence did not support the decision because "if an ALJ posited a hypothetical question to a

[VE] that fails to reflect 'all of the claimant's impairments that are supported by the record[,] . . .

it cannot be considered substantial evidence." Id. (quoting Chrupcala, 829 F.2d at 1276).

ALJ determinations in a social security appeal are subject to harmless error analysis.

Drake v. Kijakazi, No. 1-22-cv-980, 2023 WL 3060811, at *10 (M.D. Pa. April 24, 2023) (citing

Seaman v. Soc. Sec. Admin., 321 Fed. App'x 134, 135 (3d Cir. 2009) (per curiam)).  The burden

to show the error is harmful falls on the party challenging the agency's determination.  Drake,

2023 WL 3060811, at *10 (citing Shinseki v. Sanders, 556 U.S. 396, 409 (2009)).  Pursuant to

the harmless error standard, an error warrants remand if it prejudices the party's "substantial

rights." Hyer v. Colvin, 72 F. Supp. 3d 479, 494 n.16 (D. Del. 2014).  This occurs if the error

would have changed the outcome of the decision or was material to the disability determination.

Id. at 494 (citing Shinseki, 556 U.S. at 409).

In social security appeals, the harmless error standard must be applied "sparingly" and

"only in extraordinary circumstances." Mary L. v. Kijakazi, 1:20-cv-14158, 2022 WL 1058370,

at *9 (D.N.J. April 8, 2022) (quoting Orchard v. Saul, No. 18-02297, 2020 WL 1126235, at *6

(M.D. Pa. Jan. 21, 2020)), approved and adopted, March 4, 2020.  "A court cannot excuse the

denial of a mandatory procedural protection" simply because the Commissioner argues that

sufficient evidence exists in the record for the ALJ to discount some evidence and "thus, a

different outcome on remand is unlikely." Evanitus v. Berryhill,  No. 3:16-CV-845, 2018 WL

1465276, at *11 (M.D. Pa. Feb. 28, 2018), approved and adopted, March 23, 2018 (citing Wilson

v. Commissioner Soc. Sec., 378 F.3d 541, 546 (6th Cir. 2004)) (additional citations omitted).  In

other words, an error is not made harmless "simply because [the aggrieved party] appears to have . . . little chance of success on the merits anyway." Evanitus, 2018 WL 1465276, at *11 (citing Mazaleski v. Treusdell, 562 F.2d 701, 719 n.41 (D.C. Cir. 1977)) (additional citations omitted)).

Here, the ALJ only limited Edwards to "simple, routine tasks" at a consistent pace and did not address any limit to one-and two-step tasks when she posed her questions at step five to the VE.  R. 83-87.  As a result, the VE did not restrict her testimony to available jobs in the national economy limited to one- and two-step tasks.  The limitations between "simple, routine tasks" and one- and two-step tasks as applied to available jobs may be different.  See, e.g., Stine, 2023 WL 3483885, at *9; Podunajec, 2020 WL 7319779, at *6.  This difference could have affected the VE's testimony and ultimate disability finding in this case.[11]  See Hyer, 72 F. Supp. 3d at 494 (citing Shinseki, 556 U.S. at 411-12); Evanitus, 2018 WL 1465276, at *11.  Therefore, the VE's testimony does not constitute substantial evidence.  See Burns, 312 F.3d at 123; Ramirez, 372 F.3d at 554-56; Podedworny, 745 F.2d at 218; Podunjec, 2020 WL 7319779, at *6-7; see also Lam v. Astrue, CIV. A. 09-4331, 2011 WL 1884006, at *14 (E.D. Pa. March, 31, 2011) (stating "[u]ntil the ALJ forecloses the possibility that the VE could have changed his [or her] testimony . . . the VE's answer to the hypothetical as posed cannot be said to constitute substantial evidence upon which the ALJ can properly rely.") (citing Gayton v. Astrue, Civ. A. No. 08-3667, 2009 WL 1456608, at *3 (E.D. Pa. May 19, 2009)).  Remand is required because the errors at steps four and five were not harmless as outlined above.[12]

---

[11] The difference between GED reasoning level one and GED reasoning level two jobs is discussed in the next section in more detail.

[12] Even though the ultimate disability determination on remand may remain the same, the proper procedures of the five-step process must be followed.  See Evanitus, 2018 WL 1465276, at *11 (citations omitted).

**B.  The ALJ's decision is not supported by substantial evidence because Edwards might not be able to perform two jobs the VE found he could perform.**

Next, the ALJ decision is not supported by substantial evidence because the VE testified Edwards could perform two jobs which may exceed his reasoning level capabilities as established by the record.  A DOT job with GED reasoning level one requires the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions . . . ." DOT, Appx. C., § III, 1991 WL 688702 (Jan. 1, 2016).  A DOT job with GED reasoning level two requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions . . . ." Id.  Meanwhile, GED reasoning level three requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form . . . ." Id.[13]

The Court in Vickers recognized that some courts within the Third Circuit have determined that a limitation to one-to two-step tasks or instructions "is inconsistent with GED reasoning development level 2."  Vickers v. Comm'r of Soc. Sec., No. 21-1093, 2022 WL 1620076, at *3 (W.D. Pa. May 23, 2022) (citing cases).  The Court continued that, at the very least, "the ability to follow simple one or two-step instructions might trigger concern about [a claimant's] ability to perform jobs that require reasoning level 2."  Id. (quoting Molina Virola v. Comm'r of Soc. Sec., No. 18-cv-4778, 2020 WL 362747, at *4 (E.D. Pa. Jan. 21, 2020)) (additional citations omitted).  In Vickers, the ALJ arrived at an RFC limiting the claimant "to

---

[13] Specific Vocational Preparation (SVP) levels, on the other hand, refer to "'the training that would be needed for a position, not the nature of the instructions that must be followed.'" Vickers, 2022 WL 1620076, at *3 (quoting Meloni v. Colvin, 109 F. Supp. 3d 734, 742 (M.D. Pa. 2015)) (additional citations omitted).  The VE testified at the hearing about the SVP levels of the various jobs Edwards could possibly perform with his restrictions, not the GED levels.  R. 83-88.

unskilled work at the SVP 1 or 2 levels" and "one or two step instructions."  Id. at *2.  In doing

so, the ALJ gave partial weight to the opinion of a consultative examiner who found claimant

had a moderate limitation in the ability to carry out instructions but that he was "able to carry out

very short and simple instructions (i.e., perform one and two step tasks.)"  Id.  Three of the jobs

the VE identified, however, corresponded to GED reasoning level two.  Id.

While the Court explicitly acknowledged it did not conclude "the positions that the ALJ

found Plaintiff could perform were necessarily inconsistent with the RFC," it decided that

"further discussion is required to determine whether such a conflict existed between the VE's

testimony and the DOT."  Id.  The Court emphasized that it is the role of the ALJ, not the Court,

to interpret vocational evidence and explain any "potential conflict" in the record.  Id. at *3

(citing Meloni, 109 F. Supp. 3d at 741); but see Soto v. Kijakazi,  No. 4:21-cv-1531, 2022 WL

4358087, at *5, *11 (M.D. Pa. Sept. 20, 2022) (holding it was harmless error when limitation to

one-and two-step tasks was not included in questions to VE when VE opined plaintiff could

perform one GED reasoning level one job because "there is no likelihood that [remand] would

change the outcome in th[e] case."); Shingler v. Kijakazi, No. 4:20-cv-01344, 2022 WL 273426

at *12-*13 (M.D. Pa. Jan. 28, 2022) (finding remand was not required because same result

regarding disability would have been reached when ALJ improperly excluded limitation to one

or two-step tasks because plaintiff could still perform suggested cleaner/housekeeping job with a

GED reasoning level one).[14]

---

[14] Although Magistrate Judge William I. Arbuckle from the Middle District of Pennsylvania
found no error in Solo and Shingler, several magistrate judges from the same district addressing
the issue found error and remanded.  See, e.g., Simon, 2022 WL 828935, at *2, *3, *9 (Carlson,
M.J.); Podunajec, 2020 WL 7319779, at *6-*7 (Saporito, M.J.); Beltran, 3:17-CV-00715, slip.

In my view, an ALJ decision cannot be deemed supported by substantial evidence when Edwards potentially cannot perform, with his credibly established limitations, two jobs the VE testified he is able to perform.  See Vickers, 2022 WL 1620076, at *3-*4; Evanitus, 2018 WL 1465276, at *5, *11; Doc. 25, at 4-7; 10.  After the ALJ limited Edwards to jobs in which he had to perform "simple, routine tasks" at a consistent pace, the VE testified that Edwards could serve as a laundry laborer (DOT 361.687-018) and sorter I (DOT 569.687-022)—both GED reasoning level one[15] jobs.  R. 25; 84-85.  Edwards can perform these jobs by definition because they only require that he has a "commonsense understanding to carry out simple one- or two-step instructions . . . ."  DOT, Appx. C., § III, 1991 WL 688702.  This comports with the limitations Dr. Roberts and Mrykalo found.  If these jobs were the only jobs the VE determined Edwards was able to perform, no potential conflict would exist.  Specifically, the ALJ's RFC would be consistent with the VE's testimony.

The ALJ, however, failed to include a restriction or mention the limitation to one- and two-step tasks in the RFC or the questions to the VE.  R. 83-84.  As a result, Edwards may not be able to perform the work of a janitor or industrial cleaner (DOT 381.687-018) and a linen-room attendant (DOT 222.387-030)—two jobs the VE testified Edwards could perform.  R. 25; 84-85.  These jobs are classified as GED reasoning level three and two, respectively.[16]  They may

---

op. at 2-3 (M.D. Pa. Feb. 20., 2018) (Schwab, M.J.); Hurrey v. Colvin, 1:14-CV-02408, slip. opin. at 19-21 (M.D. Pa. Jan. 28, 2016) (Mehalchick, M.J.).

[15] In the DOT, each occupation is assigned a General Education Level ("GED") and corresponding reasoning level.  GED level concerns the occupation's informal and formal educational requirements.  DOT, Appx. C, § III, 1991 WL 688702.

[16] The VE set forth the Specific Vocational Preparation (SVP) numbers for each job, which are laundry laborer (SVP 2); sorter I (SVP 2); janitor or industrial cleaner (SVP 2); and linen-room attendant (SVP 2).  R. 84-85.  She did not testify regarding the GED reasoning levels of the four jobs.

require tasks not limited to one- and two-steps and exceed Edward's ability.  See DOT, Appx. C, § III, 1991 WL 688702; Doc. 25, at 6-7.  Accordingly, the present record presents a conflict that the ALJ must resolve.  See Vickers, 2022 WL 1620076, at *3.  Thus, the ALJ's decision is not supported by substantial evidence.  Remand is appropriate.

### C.  The Commissioner is not permitted to create post-hoc rationalizations for the ALJ's treatment of evidence in absence of an explanation from the ALJ herself.

Finally, the Court cannot accept the Commissioner's post-hoc rationalizations for the treatment of evidence in this case in absence of any explanation from the ALJ herself.  See Peak v. Colvin, No. 1-12-CV-1224, 2014 WL 888494, at *5 (M.D. Pa. March 6, 2014) (stating Court "may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself") (citations omitted).  It is the realm of the VE, not the Court, to interpret vocational evidence in the first instance.  Meloni, 109 F. Supp. 3d at 741 (citing Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Hum. Servs., 730 F.3d 291, 305 (3d Cir. 2013) ("Although a Court may uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned, review must be based on the administrative record [that was] already in existence before the agency, not post hoc-rationalizations made after the disputed action.'") (alterations in original).  That is, the "Commissioner may not offer a 'post-hoc rationalization' or justification" for the handling of vocational evidence as "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision."  Khal v. Kijakazi, No. 22-cv-1662, 2023 WL 4546497, at *5 (E.D. Pa. July 13, 2023) (quoting Schuster v. Astrue, 879 F. Supp. 2d 461, 466 (E.D. Pa. 2012)); Fargnoli, 247 F.3d at 44 n.7 (noting Court must rely on administrative record on which decision is based, not on records Court found in its own independent analysis) (citation omitted).

22

Here, the Commissioner argues that

> substantial evidence supports that the ALJ's RFC assessment, the
> findings of Drs. Faisal and Mrykalo were only one piece of
> evidence on which the ALJ reasonably based her RFC assessment;
> the ALJ's RFC assessment aligns with Drs. Faisal and Mrykalo's
> ultimate conclusion that Plaintiff could perform simple, routine
> tasks; and the ALJ included additional limitations (i.e., production
> and stress-related restrictions) beyond those assessed by Drs.
> Faisal and Mrykalo.

Doc. 13, at 21-22.

The Court declines to adopt the Commissioner's proposed post-hoc rationalizations for

the treatment of the evidence in this case.  Meloni, 109 F. Supp. 3d at 741 (citing Christ the King

Manor, Inc., 730 F.3d at 305).  On remand, the ALJ must explicitly address what, if any,

consideration is given to the one-and two-step task limitation proposed by the two state

psychologists as part of Edwards's RFC.  After the ALJ clarifies her consideration of the one-

and two-step task limitation, the VE, if necessary, should interpret the vocational evidence.[17]

The Court cannot otherwise find substantial evidence to support the ALJ's decision on the record

as it currently stands.

## VI.    <u>CONCLUSION</u>

The Court declines to find harmless error in this case.  The Court cannot tell whether the

ALJ considered, overlooked, or simply ignored the one-to two-step task limitation from the RFC

and the questions to the VE.  Two of the jobs the VE testified Edwards could perform exceed

GED reasoning level one, which Edwards may not be capable of performing based on his

---

[17] Notably, SSR 00-4p permits the VE to disagree with the DOT and the adjudicator "has an
affirmative responsibility to ask about any conflict between the VE evidence . . . and information
provided in the DOT."  See SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000).

credibly established limitations.  Finally, the Court will not adopt post-hoc rationalizations for the treatment of evidence in this case.  Because the ALJ's decision is not supported by substantial evidence, it must be vacated and remanded.

The Court will not address Edwards's remaining argument.  Even though the Court ultimately finds that remand is necessary, nothing in this decision suggests what the result should be on remand.  That task remains the duty and province of the ALJ after consideration of this opinion.

For the reasons discussed above, Edwards's request for review (Doc. 1) is granted.  The final decision of the Commissioner to deny Edwards benefits is **VACATED**, and the case is **REMANDED** to the Commissioner for further consideration consistent with this opinion.

An appropriate order follows.

BY THE COURT:

/s/ Craig M. Straw
CRAIG M. STRAW
U.S. Magistrate Judge